**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ELAINE MCCLAIN and DAVID MCCLAIN, | CASE NO. 6:13-cv-01589-JA-DAB |
| Plaintiffs, | |
| v. | **DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| SHELTON J. "SPIKE" LEE, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ................................................................................................3

ARGUMENT ....................................................................................................................6

      I.      Plaintiffs' Complaint Should Be Dismissed Because The Forum Selection Clause in the Existing Settlement Agreement Requires That Any Claim Be Filed In New York.........................................................................................9

      II.     Plaintiffs Have Already Released Mr. Lee From Any Claims Related To His March 23, 2012 Retweet. ...................................................................13

      III.    Mr. Lee Is Immune From Liability For His Retweet Under Section 230 of the Communications Decency Act. ............................................................18

      IV.    The Complaint Should Be Dismissed with Prejudice....................................20

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2 Broadway LLC* v. *Credit Suisse First Boston Mortg. Capital LLC*,
No. 00 Civ. 5773 GEL, 2001 WL 410074 ...................................................15

*23-24 94th St. Grocery Corp.* v. *New York City Bd. of Health*,
685 F.3d 174 (2d Cir. 2012)..........................................................................8

*Accusoft Corp.* v. *Northrup Grumman Sys. Corp.*,
No. 8:10-cv-1617-T-23AEP, 2010 WL 4788203 (M.D. Fla. Nov. 17,
2010) .............................................................................................................10

*Ascentive, LLC* v. *Opinion Corp.*,
842 F. Supp. 2d 450 (E.D.N.Y. 2011) ..........................................................19

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)........................................................................................6

*Atl. Recording Corp.* v. *Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009)...........................................................19

*Bailey* v. *New York City Transit Auth.*,
602 N.Y.S.2d 177 (1993) ..............................................................................16

*Barnes* v. *Yahoo, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ......................................................................19

*Bovie Medical Corp.* v. *Livneh*,
No. 8:10-cv-1527-T-24EAJ, 2010 WL 5297172 (M.D. Fla. Dec. 20, 2010) ..............10

*Burger King* v. *Weaver*,
169 F.3d 1310 (11th Cir. 1999) ....................................................................20

*Calavano* v. *N. Y. City Health & Hospitals Corp.*,
246 A.D.2d 317 (1st Dep't 1998) .............................................................15, 16

*Coppage* v. *U-Haul Int'l Inc.*,
No. 10 Civ. 8313(RMB), 2011 WL 519227 (S.D.N.Y. Feb. 15, 2011).......................18

*Davis* v. *Avvo, Inc.*,
No. 8:10-cv-2352-T-27TBM, 2011 WL 4063282 (M.D. Fla. Sept. 13,
2011) ..............................................................................................................10, 12

*Doe* v. *City of New York*,
583 F. Supp. 2d 444 (S.D.N.Y. 2008).......................................................................20

*Gibson* v. *Craigslist, Inc.*,
No. 08 Civ. 7735(RMB), 2009 WL 1704355 (S.D.N.Y. June 15, 2009) ..............18, 19

*Global Satellite Commc'n Co.* v. *Starmill U.K. Ltd.*,
378 F.3d 1269 (11th Cir. 2004) ...............................................................................10

*Goldberg* v. *Mfrs. Life Ins. Co.*,
672 N.Y.S.2d 39 (1st Dep't 1998) ...........................................................................13

*Harris* v. *Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ...................................................................................7

*Knight* v. *Mueller*,
No. 08-23478-CIV, 2010 WL 375621 (S.D. Fla. Jan. 26, 2010)...................................8

*Kramer* v. *Vendome Group LLC*,
No. 11 Civ. 5245(RJS), 2012 WL 4841310 (S.D.N.Y. Oct. 4, 2012) ........................14

*Krenkel* v. *Kerzner Int'l Hotels, Ltd.*,
579 F.3d 1279 (11th Cir. 2009) ..................................................................................9

*Laster* v. *Dollar General Corp.*,
No. 8:12-CV-2685-T-17MAP, 2013 WL 2147556 (M.D. Fla. May 16,
2013) ...........................................................................................................................7

*Lipcon* v. *Underwriters at Lloyd's, London*,
148 F.3d 1285 (11th Cir. 1998) ...........................................................................9, 12

*M/S Bremen* v. *Zapata Off-Shore Co.*,
407 U.S. 1 (1972)......................................................................................................12

*Mangini* v. *McClurg*,
24 N.Y.2d 556 (1969) ...............................................................................................16

*Matusovsky* v. *Merrill Lynch*,
186 F. Supp. 2d 397 (S.D.N.Y. 2002)..................................................................13, 14

*Mitan* v. *A. Neumann & Associates, LLC*,
No. 08-6154, 2010 WL 4782771 (D.N.J. Nov. 17, 2010) ..........................................19

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Walton Ins. Ltd.*,
   696 F. Supp. 897 (S.D.N.Y. 1988)...............................................................13

*Novins* v. *Cannon*,
   Civ. No. 09-5354, 2010 WL 1688695 (D.N.J. Apr. 27, 2010)....................20

*P&S Bus. Machs., Inc.* v. *Canon U.S.A., Inc.*,
   331 F.3d 804 (11th Cir. 2003) ...................................................................10

*RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*,
   485 F. Supp. 2d 472 (S.D.N.Y. 2007)........................................................14

*Seldon* v. *Magedson*,
   No. 11 Civ. 6218(PAC)(MHD), 2012 WL 4475274 (S.D.N.Y. July 10,
   2012) ..........................................................................................................19

*SFM Holdings Ltd.* v. *Banc of Am. Secs., LLC,*
   600 F.3d 1334 (11th Cir. 2010) .....................................................................7

*Slater* v. *Energy Servs. Grp. Int'l, Inc.,*
   634 F.3d 1326 (11th Cir. 2011) .............................................................9, 11

*Steinberg* v. *Alpha Fifth Group,*
   No. 04-60899-CIV, 2008 WL 906270 (S.D. Fla. Mar. 31, 2008) .................8

*Sybac Solar AG* v. *Sybac Solar, LLC,*
   No. 8:12-CV-1218-T-17TGW, 2012 WL 6814193 (M.D. Fla. Oct. 22,
   2012) ............................................................................................................9

*Trafalgar Capital Specialized Inv. Fund (In Liquidation)* v. *Hartman,*
   878 F. Supp. 2d 1274 (S.D. Fla. 2012) ......................................................12

*Universal Express, Inc.* v. *S.E.C.,*
   177 F. App'x 52 (11th Cir. 2006) ................................................................8

*Usach* v. *Tikhman,*
   Nos. 11 Civ. 954(DLC), 11 Civ. 1472 (DLC), 2011 WL 6106542
   (S.D.N.Y. 2011)...........................................................................................13

*Van Dusen* v. *Barrack,*
   376 U.S. 612 (1964).....................................................................................12

*Verstreate* v. *Cohen,*
   242 A.D.2d 862 (4th Dep't 1997).................................................................15

*VI MedRX, LLC* v. *Hurley Consulting Assocs., Ltd.,*
  No. 3:11-cv-1034-J037TEM, 2012 WL 10494 (M.D. Fla. Jan. 3, 2012) .....................9

*Warming Tree Serv., Inc.* v. *BellSouth Adver. & Pub. Corp.*,
  No. 3:09-cv-124-J-32MCR, 2009 WL 2869317 (M.D. Fla. Sept. 1, 2009) ...............10

*Whittaker* v. *Wells Fargo Bank, N.A.,*
  No. 6:12-cv-98-Orl-28GJK, 2013 WL 5442270 (M.D. Fla. Sept. 27, 2013) ...............7

*In re WorldCom, Inc.*,
  296 B.R. 115 (Bankr. S.D.N.Y. 2003) .......................................................................16

**Statutes**

28 U.S.C. § 1404 ...................................................................................................1, 9, 10

28 U.S.C. § 1406 .............................................................................................................10

47 U.S.C. § 230 ...............................................................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 12 ....................................................................... *passim*

Transcript of Oral Argument, *Atlantic Marine Constr. Co.* v. *United States
  Dist. Court for W. Dist of Tex.* (Oct. 9, 2013) (No. 12-929).......................................10

Pursuant to Federal Rules of Civil Procedure 12(b)(3) & 12(b)(6), Defendant Shelton J. "Spike" Lee respectfully submits this Memorandum of Law in Support of his Motion to Dismiss with Prejudice the Complaint (Doc. 2) filed by Elaine and David McClain or, in the alternative, to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404.

## PRELIMINARY STATEMENT

The Court should dismiss this case because Plaintiffs have already settled their claim of alleged negligence.

The underlying facts here relate to the public controversy concerning the fatal shooting of 17-year-old Trayvon Martin by George Zimmerman in February 2012. Defendant Spike Lee, a film director, actor, author and educator, commented on the tragedy using Twitter, an online social media service that permits users to publish short text messages known as "tweets," and to "retweet" messages posted by other users.  On March 23, 2012, Mr. Lee received and retweeted a message containing what purported to be the address of George Zimmerman, but was actually the address of Plaintiffs Elaine and David McClain. After learning of this mistake, Mr. Lee swiftly removed the retweet in question and issued a public apology to the McClains.

Counsel for the McClains subsequently contacted Mr. Lee to request money. On March 29, 2012, Plaintiffs, represented by counsel, entered into a settlement agreement (the "Settlement Agreement") with Mr. Lee and released him from any and all disputes between them related to the mistaken retweet, in exchange for a $10,000 payment.

Moreover, the Settlement Agreement contains a forum selection clause that states that any disputes relating to it must be brought in New York.

In disregard of the Settlement Agreement, Plaintiffs, using new attorneys, sued Mr. Lee in the Florida Circuit Court in Seminole County on September 16, 2013. The Complaint alleges that Mr. Lee acted negligently when he retweeted the McClains' address in March 2012. This is, of course, the very activity that was the subject of the Settlement Agreement. Critically, Plaintiffs acknowledge in the Complaint that they entered into the Settlement Agreement with Mr. Lee on March 29, 2012, and they do not allege that Mr. Lee did anything wrong after that date. Nevertheless, Plaintiffs claim that Mr. Lee is liable to them for alleged injuries caused by unidentified third parties who published their address on the Internet in June and July 2013, purportedly based on Mr. Lee's mistaken retweet from more than a year earlier.

Plaintiffs' Complaint is deficient on its face for at least three reasons:

*First*, Plaintiffs improperly brought this case in Florida state court, violating the mandatory forum selection clause in the Settlement Agreement.

*Second*, the single claim of negligence alleged in the Complaint—which is based on Mr. Lee's March 23, 2012 retweet—was released by Plaintiffs in the Settlement Agreement. The language of the release is clear and unambiguous, and it completely forecloses Plaintiffs' current action.

*Third*, Mr. Lee is immune from liability under Section 230 of the Communications Decency Act, which protects Internet users who forward or post online information provided by a third party.

## STATEMENT OF FACTS

On February 26, 2012, George Zimmerman, a resident of Sanford, Florida, fatally shot 17-year-old Trayvon Martin. (Doc. 2, Compl. at 1-2, ¶ 7). On March 23, 2012, a Twitter user posted the following tweet on his account: "EVERYBODY REPOST THIS George W. Zimmerman 159 Edgewater Circle, Sanford, Florida. 23733," and later that day, Mr. Lee retweeted that message. (*Id*. at 2, ¶ 14); (Ex. 1).[1] It later became known that this address was the home of Plaintiffs Elaine and David McClain, not Mr. Zimmerman. *See*, *e.g.*, (Compl. at 2, ¶ 8); (Doc. 3-1 at 1). Upon learning that the information was incorrect, Mr. Lee removed the retweet in question from his Twitter account and tweeted an apology to the McClain family, which stated: "I Deeply Apologize To The McClain Family For Retweeting Their Address.It Was A Mistake.Please Leave The McClain's In Peace.Justice In Court." (Ex. 2). Since that time, Mr. Lee's retweet containing Plaintiffs' address has not appeared on his Twitter account. This account is available to the public; indeed, as the Complaint states, "tweets are publicly visible by default . . . ." (Compl. at 2, ¶ 10).

Subsequently, counsel for the McClains contacted Mr. Lee and requested money. On March 29, 2012, Plaintiffs, represented by counsel, entered into a settlement

---

[1] A copy of Mr. Lee's retweet containing the full text is attached as Exhibit 1. As discussed further below (see pages 7 & 8), the Court should consider documents referenced in the Complaint, such as the Settlement Agreement and the March 23, 2012 retweet in question, even though Plaintiffs failed to attach them as exhibits. In addition, this Court may also consider the March 23, 2012 retweet and Mr. Lee's March 28, 2012 apology tweet because they are publicly available information and subject to judicial notice.

agreement with Mr. Lee.  (*Id.* at 3, ¶ 18); (Ex. 3 at 1).  The Settlement Agreement provides

that, in exchange for $10,000, Plaintiffs:

> [v]oluntarily, knowingly, and willfully release and forever
> discharge Mr. Lee from any and all actions, causes of action,
> suits, claims, or complaints and rights of any nature whatsoever
> which the McClains now have against Mr. Lee, whether or not
> known to the McClains, including but not limited to any and all
> actions, suits, claims or complaints and rights of any nature
> relating to or arising out of the twitter posting . . . .

(*Id.* at 2, § 2).

Plaintiffs consented that the Settlement Agreement "shall be governed and

construed in accordance with the laws of the State of New York . . . ."  (*Id.* at 2, § 6).  And

Plaintiffs also consented that "[a]ny action related to or arising from [the] Agreement shall be

brought exclusively in the federal or state courts located in New York County, New York"

and agreed to "irrevocably submit to the jurisdiction of such courts for the purpose of any

such action, proceeding or judgment and waive any defense based on the location, venue or

jurisdiction of such courts."  (*Id.* at 3, § 6).

Mr. Zimmerman's criminal trial occurred in June and July 2013,

approximately 15 months after the Settlement Agreement was signed.  (Compl. at 3, ¶ 19).

Plaintiffs allege that during the time surrounding the trial, messages were posted by

unidentified third parties on Twitter and other social media sites that contained their home

address, and further allege—though without any factual support—that these third parties got

the address from Mr. Lee's 2012 retweet.  *See*, *e.g.*, (Compl. at 3-4, ¶ 20).  The Complaint

fails to mention, however, that as a review of Mr. Lee's publicly available Twitter account

shows, the retweet at issue has been removed from that account.  And the Complaint does not explain how the retweet that was removed in 2012 could have served as the basis for any message posted on Twitter by any other user in 2013.  The Complaint quotes 11 tweets as examples of communications that supposedly were derived from Mr. Lee's 2012 retweet, but none of them mention Mr. Lee or otherwise indicate that the McClains' address was obtained from him.  *See* (Compl. at 3-4, ¶¶ 20(a)-(k)).

Despite the existence of the Settlement Agreement, on September 16, 2013, the McClains, having retained new counsel, filed an action against Mr. Lee in the Florida Circuit Court in Seminole County, which alleges a single act of negligence.  Specifically, the Complaint alleges that, in posting the McClains' address on Twitter on or about March 23, 2012, Mr. Lee "acted in a negligent, grossly negligent, reckless, consciously indifferent, and/or willful manner, and breached his duty of care the Plaintiffs."  (Compl. at 2 and 4-5, ¶¶ 14 and 24).  According to the Complaint, when the unidentified third parties published the McClains' home address on the Internet in 2013, the McClains sustained and continued to sustain injuries, and Mr. Lee should purportedly be liable as a result.  (*Id.* at 3-5, ¶¶ 20-21 and 23-24).  Plaintiffs seek compensatory damages for temporary relocation, threatening mail and phone calls, prolonged presence of media and law enforcement near their property, mental anguish, anxiety, difficulty sleeping, loss of capacity for the enjoyment of life, and a permanent loss to their home's market value.  (*Id.* at 5, ¶ 25).  According to the Complaint, these injuries "were realized subsequent to March 29, 2012."  (*Id.* at 5, ¶ 26).

On October 15, 2013, Mr. Lee removed this action to the United States District Court for the Middle District of Florida based on diversity jurisdiction. *See generally* (Doc. 1).  Plaintiffs did not challenge the removal.  On October 21, 2013, Magistrate Judge Baker *sua sponte* issued an order requiring Mr. Lee to show cause that Plaintiffs' complaint satisfied the amount in controversy requirement for removal.  (Doc. 7). In response, Mr. Lee submitted a declaration from his counsel that memorialized a telephone call in which Plaintiffs' counsel valued the case at $1.2 million.  (Doc. 8-1).  On October 24, 2013, Magistrate Judge Baker issued a report and recommendation recommending that this case be remanded to Florida state court.  (Doc. 11 at 3).  On November 8, 2013, Mr. Lee filed an objection and response to the report and recommendation, requesting that the Court maintain jurisdiction over the case.  (Doc. 20).

As demonstrated below, the Complaint should be dismissed with prejudice or, in the alternative, transferred to the Southern District of New York.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "'A pleading that offers mere labels and conclusions' or . . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id.* (quoting

6

*Twombly* at 555, 557).  In considering a motion to dismiss a "court limits its 'consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.'"  *Whittaker* v. *Wells Fargo Bank, N.A.*, No. 6:12-cv-98-Orl-28GJK, 2013 WL 5442270, at *1 (M.D. Fla. Sept. 27, 2013) (Antoon, J.) (quoting *LaGrasta* v. *First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).  Further, in ruling on a motion to dismiss, "the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *SFM Holdings Ltd.* v. *Banc of Am. Secs., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Harris* v. *Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

Here, the Court should consider the Settlement Agreement and the full text of the relevant messages posted on Twitter by Mr. Lee that are referenced in the Complaint. Although Plaintiffs did not attach a copy of the Settlement Agreement to the Complaint, they specifically refer to it in the Complaint.  (Compl. at 3, ¶ 18) ("On March 29, 2012, Plaintiffs Elaine McClain and David McClain entered into a Settlement Agreement with Defendant . . . .").  Where a plaintiff makes specific reference to an agreement in a complaint, that agreement may considered as part of a motion to dismiss, even if the plaintiff did not provide it to the court.  *See Laster* v. *Dollar General Corp.*, No. 8:12-CV-2685-T-17MAP, 2013 WL 2147556, at *1 (M.D. Fla. May 16, 2013) (stating that "the Court may consider documents which are central to plaintiff's claim whose authenticity is not

challenged, whether the document is physically attached to the complaint or not"); *see also*, *e.g.*, *Knight* v. *Mueller,* No. 08-23478-CIV, 2010 WL 375621, at *3–4 (S.D. Fla. Jan. 26, 2010) (considering settlement agreement referenced in complaint in granting motion to dismiss for lack of subject matter jurisdiction); *Steinberg* v. *Alpha Fifth Group*, No. 04-60899-CIV, 2008 WL 906270, at *4–5 (S.D. Fla. Mar. 31, 2008) (relying, in part, on settlement agreement that plaintiff failed to attach to complaint in granting motion to dismiss for failure to state a claim).

In addition, the Court may take judicial notice of and consider public records in deciding a motion to dismiss, *Universal Express, Inc.* v. *S.E.C.,* 177 F. App'x 52, 53 (11th Cir. 2006) (unpublished), and may take judicial notice of the fact that content has been published online. *See*, *e.g.*, *23-24 94th St. Grocery Corp.* v. *New York City Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of a poster published on a website). Here, Mr. Lee's Twitter account and the information he placed there on or about March 23 and 28, 2012 constitute publicly available information. Even though Mr. Lee's March 23, 2012 retweet has been removed from his Twitter page, it is currently available through an online data archive of messages that have previously been posted on Twitter, maintained by Topsy Labs Inc. ("Topsy") at the website http://www.topsy.com. (Ex. 1.) Mr. Lee's March 28, 2012 apology tweet is currently available on his Twitter page. (Ex. 2.)

For these reasons, the Court should consider the Settlement Agreement as well as the March 23, 2012 retweet and March 28, 2012 apology tweet in deciding this motion.

I.      **Plaintiffs' Complaint Should Be Dismissed Because The Forum Selection Clause in the Existing Settlement Agreement Requires That Any Claim Be Filed In New York.**

In the Eleventh Circuit, a motion to dismiss on the basis of a forum selection clause is properly brought pursuant, *inter alia*, to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue.  *E.g.*, *Lipcon* v. *Underwriters at Lloyd's*, *London*, 148 F.3d 1285, 1290 (11th Cir. 1998); *see also, e.g.*, *Slater* v. *Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1332–33 (11th Cir. 2011) (finding that a forum selection clause may be the basis for transfer pursuant to 28 U.S.C. § 1404(a) or for dismissal pursuant to Rule 12(b)(3)).  "Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances."  *Krenkel* v. *Kerzner Int'l Hotels, Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (internal citation omitted).  Here, the forum selection clause is valid and enforceable; indeed, in the Complaint, Plaintiffs acknowledge the existence of the Settlement Agreement and never suggest that it is unfair or unreasonable.  In fact, Plaintiffs appear to concede, at least implicitly, that the Settlement Agreement is fully enforceable with respect to any alleged harm that might have been caused by Mr. Lee's retweet prior to March 29, 2012, the date the Settlement Agreement was signed.

Courts in this district have consistently enforced mandatory forum selection clauses pursuant to Rule 12(b)(3).  *See, e.g., Sybac Solar AG* v. *Sybac Solar, LLC*, No. 8:12-CV-1218-T-17TGW, 2012 WL 6814193 (M.D. Fla. Oct. 22, 2012) (report and recommendation for enforcement of valid forum selection clause and dismissal of case pursuant to Rule 12(b)(3)), *adopted*, 2013 WL 104912 (M.D. Fla. Jan. 9, 2013); *VI MedRX,*

*LLC* v. *Hurley Consulting Assocs., Ltd.,* No. 3:11-cv-1034-J037TEM, 2012 WL 10494 (M.D. Fla. Jan. 3, 2012) (granting dismissal pursuant to Rule 12(b)(3) based on valid forum selection clause); *Bovie Medical Corp.* v. *Livneh*, No. 8:10-cv-1527-T-24EAJ, 2010 WL 5297172 (M.D. Fla. Dec. 20, 2010).[2]  By enforcing a forum selection clause, the Court "is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen."  *P&S Bus. Machs., Inc.* v. *Canon U.S.A., Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

A forum selection clause must be enforced if the clause is mandatory and the claim at issue falls within the scope of the forum selection clause.  *See Davis,* 2011 WL 4063282 at \*2.  The forum selection clause in the Settlement Agreement satisfies both requirements.

First, the forum selection clause in the Settlement Agreement is mandatory because it provides that disputes relating to the Settlement Agreement "*shall* be brought *exclusively* in" New York.  (Ex. 3 at 3, § 6) (emphasis added).  A mandatory forum selection clause "dictates an exclusive forum for litigation . . . ."  *Global Satellite Commc'n Co.* v. *Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (internal quotation omitted).  The

---

[2] Courts in this district have also enforced mandatory forum selection clauses by transferring cases to other districts pursuant to 28 U.S.C. § 1404(a).  *See, e.g., Davis* v. *Avvo, Inc.,* No. 8:10-cv-2352-T-27TBM, 2011 WL 4063282 (M.D. Fla. Sept. 13, 2011) (enforcing valid forum selection clause and transferring case pursuant to 28 U.S.C. § 1404(a)); *Accusoft Corp.* v. *Northrup Grumman Sys. Corp.*, No. 8:10-cv-1617-T-23AEP, 2010 WL 4788203 (M.D. Fla. Nov. 17, 2010) (same); *Warming Tree Serv., Inc.* v. *BellSouth Adver. & Pub. Corp.*, No. 3:09-cv-124-J-32MCR, 2009 WL 2869317 (M.D. Fla. Sept. 1, 2009) (same).

To the extent necessary, Mr. Lee respectfully requests that the Court construe his request for enforcement of the forum selection clause in the parties' Settlement Agreement as being made pursuant to Rule 12(b)(3), 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a), and even Rule 12(b)(6)—as recently discussed at oral argument before the U.S. Supreme Court in a case presenting the question of which of the foregoing vehicles is appropriate when a party seeks to enforce a forum selection clause.  Transcript of Oral Argument at 15-16, 20-22, 48 & 55-56, *Atlantic Marine Constr. Co.* v. *United States Dist. Court for W. Dist of Tex.* (Oct. 9, 2013) (No. 12-929), available at http://www.supremecourt.gov/oral_arguments/argument_transcripts/12-929_3204.pdf.

words "shall" and "exclusively" are terms of exclusivity that make a forum selection clause mandatory. *See, e.g., Slater*, 634 F.3d at 1330.

Second, the forum selection clause here requires the dismissal of Plaintiffs' case because the single act of negligence alleged in the Complaint—Mr. Lee's March 23, 2012 retweet of a message containing the McClains' address—directly relates to the Settlement Agreement. Since Mr. Lee's only act of alleged negligence occurred prior to execution of the Settlement Agreement, and is expressly referenced and released in the Settlement Agreement, Plaintiffs' claim thus relates to the Settlement Agreement, which triggers the mandatory forum selection clause.

Plaintiffs cannot escape the forum selection clause by arguing that their damages were not realized until after the Settlement Agreement was signed on March 29, 2012, when in June and July 2013, third parties posted their address on several social networking sites around the time of Mr. Zimmerman's criminal trial. The forum selection clause is applicable because Plaintiffs' action against Mr. Lee is "related to" the act of alleged negligence by Mr. Lee that is unambiguously released in the Settlement Agreement. Even if Plaintiffs argue that the Settlement Agreement does not apply to the injuries they now allege (it does), it is necessary to examine and interpret the Settlement Agreement to determine whether Plaintiffs' argument is correct (it is not). By signing the Settlement Agreement, Plaintiffs agreed that a New York court would make this determination, and their current efforts to plead around the Settlement Agreement should be denied.

Finally, Plaintiffs cannot escape the forum selection clause by alleging that is unreasonable and therefore unenforceable. The party opposing a mandatory forum selection

clause "bears a heavy burden of demonstrating unreasonableness." *Davis*, 2011 WL

4063282, at *2; *see also M/S Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972) ("[T]he

forum clause should control absent a strong showing that it should be set aside.").  But such

clauses are unreasonable only when:

> (1) [their] formation was induced by fraud or overreaching;
> (2) the plaintiff effectively would be deprived of its day in
> court because of the inconvenience or unfairness of the
> chosen forum; (3) the fundamental unfairness of the chosen
> law would deprive the plaintiff of a remedy; or (4)
> enforcement of such provisions would contravene a strong
> public policy.

*Lipcon*, 148 F.3d at 1296.  Plaintiffs cannot carry this burden.

*First*, Plaintiffs had the opportunity to consult with counsel[3] and freely entered

into the Settlement Agreement "without any degree of duress or compulsion whatsoever."

(Ex. 3 at 3, § 7).  *Second*, by agreeing to the mandatory forum selection clause, Plaintiffs

"waived their right to assert their own convenience as a factor" weighing against transfer.

*Trafalgar Capital Specialized Inv. Fund (In Liquidation)* v. *Hartman*, 878 F. Supp. 2d 1274,

1286 (S.D. Fla. 2012).  *Third*, there is no "fundamental unfairness" of litigating in the

Southern District of New York such that Plaintiffs would be left without a remedy.  This is a

common law negligence action that courts in New York are perfectly equipped to adjudicate,

and the parties have agreed that New York law governs this dispute.  (Ex. 3 at 2, § 6).  *See*

*Van Dusen* v. *Barrack*, 376 U.S. 612, 645 (1964) ("There is an appropriateness . . . . in

having the trial of a diversity case in a forum that is at home with the state law that must

---

[3] Indeed, Plaintiffs' former counsel, Matt Morgan, also signed the Settlement Agreement.  (Ex. 3 at 3).

govern the case."). *Fourth*, enforcing the forum selection clause would not contravene any public policy.

## II.   Plaintiffs Have Already Released Mr. Lee From Any Claims Related To His March 23, 2012 Retweet.

Plaintiffs' claim should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail to state a viable claim.  Plaintiffs and Mr. Lee entered into a valid and enforceable Settlement Agreement, and Plaintiffs should be held to it.  Under New York law, which governs the interpretation of the Settlement Agreement (Ex. 3 at 2, § 6), "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc.,* 655 F.3d at 142 (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)) (internal quotation marks omitted); *see also Usach* v. *Tikhman*, Nos. 11 Civ. 954(DLC), 11 Civ. 1472 (DLC), 2011 WL 6106542 at *6 (S.D.N.Y. 2011) (same); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Walton Ins. Ltd.*, 696 F. Supp. 897, 901 (S.D.N.Y. 1988) (same).  A motion to dismiss will be granted on the basis of a settlement agreement releasing claims where, as here, the terms of the Settlement Agreement are "clear and unambiguous."  *Matusovsky* v. *Merrill Lynch,* 186 F. Supp. 2d 397, 401 (S.D.N.Y. 2002) (citing *Skluth* v. *United Merchs. and Mfrs., Inc.*, 163 A.D.2d 104, 106 (1st Dep't 1990)); *see, e.g.*, *Goldberg* v. *Mfrs. Life Ins. Co.*, 672 N.Y.S.2d 39, 44 (1st Dep't 1998) (dismissing claims against insurance company where plaintiff had executed a "clear and unambiguous" release).

The Settlement Agreement here is "clear and unambiguous."  It states that in consideration for Mr. Lee's payment of $10,000, Plaintiffs:

> [v]oluntarily, knowingly and willingly release and forever
> discharge Mr. Lee from any and all actions, causes of action,
> suits, claims, or complaints and rights of any nature whatsoever
> which the McClain now have against Mr. Lee, whether or not
> known to the McClains, including but not limited to *any and
> all actions, suits, claims, or complaints and rights of any
> nature relating to or arising out of the [March 23, 2012]
> twitter posting . . . .*

(Ex. 3 at 2, § 2) (emphasis added).  Courts have repeatedly held that releases with similar language are "clear and unambigious."  *See Kramer* v. *Vendome Group LLC*,  No. 11 Civ. 5245(RJS), 2012 WL 4841310, at *2 (S.D.N.Y. Oct. 4, 2012) (holding that release which states that the plaintiff releases the defendant from "any and all claims or charges that [Plaintiff has] or might have against defendant" is "clear and unambiguous"); *Matusovsky*, 186 F. Supp. 2d at 399–400 (concluding that a release stating that the plaintiff "release[s] and give[s] up any and all claims which [the plaintiff] may have against [the defendant,] . . . including those of which [the plaintiff is] not aware and those not mentioned in this release," was "clear and unambiguous" and "written in plain English") (citation omitted).

The clear and unambiguous terms of the Settlement Agreement release Mr. Lee from the claim found in the Complaint, which alleges a single act of negligence—his March 23, 2012 retweet.  (Compl. at 2-3, ¶¶ 14 and 18).  Although Plaintiffs allege that third parties subsequently retweeted the McClains' address,  (*id*. at 3-4, ¶ 20), they do not—and cannot—cite any action by Mr. Lee that postdates the Settlement Agreement.  Because Mr. Lee's alleged negligence occurred before the Settlement Agreement was executed, it is covered by the release.  *See, e.g.*, *RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*, 485 F. Supp. 2d 472, 477 (S.D.N.Y. 2007) (claims barred by release because "the allegations in the

complaint focus almost exclusively on [defendant's] conduct prior to [the date the release was signed].")); *2 Broadway LLC* v. *Credit Suisse First Boston Mortg. Capital LLC*, No. 00 Civ. 5773 GEL, 2001 WL 410074, at *7 (S.D.N.Y. Apr. 23, 2001 ("[A]ll of [plaintiffs'] causes of action are based on conduct that occurred before the release was signed, and thus all are unambiguously covered by the release.").

As discussed above, Plaintiffs' Complaint does not suggest that the Settlement Agreement is invalid or that it does not cover alleged injuries purportedly caused by Mr. Lee's retweet that they sustained prior to March 29, 2012.  Rather, the theory of Plaintiffs' case appears to be that the Settlement Agreement covers *only* damages they sustained through March 29, 2012, and that subsequent injuries purported to be the consequences of Mr. Lee's alleged negligence are *not* covered by the Settlement Agreement.  Such a theory is meritless.  Not only does it contradict the express language of the Settlement Agreement— which covers "any and all causes of actions, suits, claims or complaints and rights of any nature relating to or arising out of the twitter posting"—it is foreclosed by New York law and common sense.

New York courts have routinely held that settlement agreements are construed to cover foreseeable consequences of known injuries, even if the plaintiff is mistaken as to such consequences.  It is well-settled New York law that a party to a release cannot avoid the express terms of that release based on a "mistake as to the consequences of a known injury." *Calavano* v. *N. Y. City Health & Hospitals Corp.*, 246 A.D.2d 317, 319 (1st Dep't 1998) (internal citation omitted); *Verstreate* v. *Cohen*, 242 A.D.2d 862, 862–63 (4th Dep't 1997).

15

Thus, as New York's highest court has explained, "[i]f the injury is known, and the mistake . . . . is merely as to the consequence, future course, or sequelae of a known injury, then the release will stand." *Mangini* v. *McClurg*, 24 N.Y.2d 556, 564 (1969).

Here, at the time that Plaintiffs entered into the Settlement Agreement, it was well-known that it was possible for information posted on Twitter (by Mr. Lee or anyone else) to be retweeted in the future, as is alleged—though without any factual support—to have occurred here.  Indeed, the Complaint alleges that it is easy to retweet information by simply clicking a button on Twitter.  (Compl. at 3, ¶ 17).  For these reasons, to the extent that any of the unnamed individuals who posted the McLains' address on Twitter in 2013 somehow obtained that information from Mr. Lee's 2012 retweet, such a consequence was eminently foreseeable when the Settlement Agreement was signed.

Even if the consequences in 2013 of Mr. Lee's alleged negligence in 2012 were substantial—or at least more serious than Plaintiffs anticipated—"such uncertainties are presumed to have been considered when the parties agreed upon the adjustment of their claims" and are not a basis to void a release.  *Bailey* v. *New York City Transit Auth.*, 602 N.Y.S.2d 177, 178 (1993) (internal citation omitted).  Instead, the party seeking to renege on a settlement agreement must demonstrate "both that the injury was unknown at the time of the release and that the release was limited rather than general, in order to establish that the parties had not intended the literal effect of the release." *Calavano*, 246 A.D.2d at 318–319. Plaintiffs' Complaint does neither, and the clear and unambiguous release, fairly bargained for, should be enforced.  *See In re WorldCom, Inc.*, 296 B.R. 115, 120 (Bankr. S.D.N.Y.

16

2003) (noting that "without contractual releases, the settlement of disputes would be rendered almost impossible," and cautioning that a release "should never be converted to a starting point for renewed litigation except under circumstances . . . which would render any other result a grave injustice"). Based on these principles, the release in the Settlement Agreement should be interpreted to bar Plaintiffs' frivolous attempt to litigate a matter that they have already fully settled.

Plaintiffs' claim also defies common sense. Under the theory of liability on which Plaintiffs appear to rely, although they entered into the Settlement Agreement with Mr. Lee on March 29, 2012, had a tweet by a third party containing their home address been published on March 30, 2012, they could have sued Mr. Lee on that day notwithstanding the Settlement Agreement they had signed a day earlier. To state this argument is to expose its absurdity. The parties' intent to settle any liability that might arise from or relate to Mr. Lee's March 23, 2012 retweet is plainly expressed in the language of the Settlement Agreement.

Finally, Plaintiffs' Complaint should also be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to allege any act of negligence by Mr. Lee that could support their claim. As a threshold matter, although Plaintiffs have alleged that Mr. Lee owed them a duty of care and that he breached that duty, this is simply a naked assertion, devoid of factual support. Moreover, Plaintiffs have alleged no facts to show that the 2013 retweets that supposedly caused them harm were derived from Mr. Lee's 2012 retweet, rather than some other source. In any event, to the extent that Mr. Lee owed Plaintiffs any duty—

and we submit that he did not—he fully discharged that duty by removing the retweet at issue from his Twitter account, issuing a public apology and entering into the Settlement Agreement, which released him from any liability relating to that retweet. The 2013 retweets on which the Complaint focuses were not published by Mr. Lee and cannot give rise to a viable negligence claim against him.

### III.   Mr. Lee Is Immune From Liability For His Retweet Under Section 230 of the Communications Decency Act.

The Complaint must also be dismissed pursuant to Section 230 of the Communications Decency Act. Under Section 230, "[n]o . . . user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider," and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. §§ 230(c)(1), 230(e)(3). Although Section 230 immunity is an affirmative defense, it is properly considered on a motion to dismiss. *See, e.g., Coppage* v. *U-Haul Int'l Inc.*, No. 10 Civ. 8313(RMB), 2011 WL 519227, at *2 (S.D.N.Y. Feb. 15, 2011) (granting motion to dismiss based on Section 230 safe harbor); *Gibson* v. *Craigslist, Inc.*, No. 08 Civ. 7735(RMB), 2009 WL 1704355, at *1 n.1 (S.D.N.Y. June 15, 2009) (noting that Section 230 immunity is properly considered on a motion to dismiss where "the necessary facts are apparent on the face of the complaint and the immunity available under the CDA precludes a plaintiff from stating a claim.").

To determine whether Section 230 immunity is available, a court must consider:  (i) whether the defendant is a user of an interactive computer service; (ii) whether

the postings at issue are information provided by another information content provider; and (iii) whether the plaintiff's claims seek to treat the defendant as a publisher or speaker of third party content. *Gibson*, 2009 WL 1704355, at *3 (internal citation omitted). "Courts across the county have repeatedly held that the CDA's grant of immunity should be construed broadly." *Atl. Recording Corp.* v. *Project Playlist, Inc.,* 603 F. Supp. 2d 690, 699 (S.D.N.Y. 2009) (collecting cases). New York courts have thus interpreted Section 230 to bar a wide range of claims. *See, e.g., Seldon* v. *Magedson*, No. 11 Civ. 6218(PAC)(MHD), 2012 WL 4475274, at *16–18 (S.D.N.Y. July 10, 2012) (defamation and breach of contract); *Ascentive, LLC* v. *Opinion Corp.*, 842 F. Supp. 2d 450, 471–76 (E.D.N.Y. 2011) (unfair trade practices, consumer protection, contractual interference, and unjust enrichment).

Here, Section 230 bars Plaintiffs' claim because Mr. Lee is plainly a "user of an interactive computer service"—Twitter—who retweeted "information provided by another information content provider" and because the Complaint treats Mr. Lee as the "publisher or speaker" of information provided by a third party. *See* (Compl. at 3, ¶ 16) (describing Mr. Lee's retweet of Plaintiffs' home address as a "publication" of that address). Although Plaintiffs allege that Mr. Lee was negligent, "[w]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress— what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another . . . . If it does, [Section 230] precludes liability." *Barnes* v. *Yahoo, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009). Accordingly, a number of courts have held that Section 230 immunity is available in cases involving similar facts. *See*, *e.g.*, *Mitan* v. *A. Neumann & Associates, LLC*, No. 08-

6154, 2010 WL 4782771 (D.N.J. Nov. 17, 2010) (Section 230 bars claims against defendant who forwarded allegedly libelous email); *Novins* v. *Cannon*, Civ. No. 09-5354, 2010 WL 1688695 (D.N.J. Apr. 27, 2010) (Section 230 bars defamation claim against defendants who republished Usenet postings); *cf. Doe* v. *City of New York*, 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008) (rejecting Section 230 immunity for defendant who forwarded actionable emails because he "attached his own commentary [to the emails] . . . . [and thereby] ceased to be a passive host of third-party information").

Accordingly, Section 230 of the Communications Decency Act requires dismissal of the Complaint.

## IV.     The Complaint Should Be Dismissed with Prejudice.

The Complaint should be dismissed with prejudice because any amendment would be futile.  *See Burger King* v. *Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (internal quotation omitted).

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 12, 2013, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ Joshua S. Rothstein
David B. King
Florida Bar No.: 0093426
Taylor F. Ford
Florida Bar No.: 0041008
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone:  (407) 422-2472
Facsimile:  (407) 648-0161
Email:  dking@kbzwlaw.com
Email:  tford@kbzwlaw.com

Theodore V. Wells, Jr.
New York Bar No.: 3936770 (PHV)
David W. Brown
New York Bar No.: 4075404 (PHV)
Joshua S. Rothstein
New York Bar No.: 4453759 (PHV)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  twells@paulweiss.com
Email:  dbrown@paulweiss.com
Email:  jrothstein@paulweiss.com

*Counsel for Defendant Shelton J. "Spike" Lee*